WILCOXEN J.,
Specially Concurring Opinion.
Plaintiff brings this petition as representative of a certified class below. Inasmuch as the action seeks enforcement of a treaty between the United States and the Cherokee Nation. Plaintiffs standing is suspect. The D.C. Circuit in Vann v. Kempthorne, 534 F.3d 741, 748 (D.C.Cir.2008) recognized this.
“Nothing in § 1 of the 13th Amendment so much as hints at a federal court suit by a private party to enforce the prohibition against badges and incidents of slavery against Indian tribes ... The 1866 Treaty similarly lacks any clear abrogation of tribal sovereign immunity, as the 10th Circuit correctly concluded in Nero [v. Cherokee Nation of Oklahoma], 892 F.2d [1457] at 1461 [(10th Cir.1989) ].
Treaties are agreements between sovereigns. Notwithstanding, because of the importance of the issues raised, this Court should now address the merits.
The Treaty of 1866 granted the Freedman “all the rights of Native Cherokees.” The question now is whether or not the members of the Cherokee Nation today can amend their Constitution to redefine their membership. Specifically, can they do so when the same would arguably not be in comport with a treaty.
The Cherokee Nation argues that the Tribe is free to determine its own membership, including the imposition of a blood requirement. The Tribe contends that the Freedman seek in effect a super-citizenship right that can never be removed. Nash relies upon the plenary power of Congress to regulate the Cherokee Nation and the supremacy of federal law, the Treaty of 1866 itself, the Thirteenth Amendment and Equal Protection as guaranteed by the Cherokee Constitution.
The issue presented here is without precedence. It pits the Tribe’s right to determine its membership against rights arising from the Treaty of 1866 between the Cherokee Nation and the United States. It also raises issues of the limits of tribal sovereignty in the modern context.
The Tribe can be subject to substantive constraints imposed by Congress. Vann v. Kempthorne, 534 F.3d 741, 748 (D.C.Cir.2008). Even so, Congress has not explicitly prohibited the Tribe from amending its Constitution to redefine its membership. While the D.C. Circuit found that there was nothing in the 13th Amendment or the 1866 Treaty which worked an abrogation of the Tribe’s sovereign immunity, the Circuit nevertheless found that the Tribe no longer had a sovereign interest in conducting discriminatory elections. This conclusion comes in sharp contrast to the Tribe’s inherent right to determine its own membership today. Notwithstanding, the Circuit Court stopped short of finding that the tribe could not define its membership through constitutional amendment.
The Circuit Court decision in Vann was an appeal of the 2006 decision by the District Court of the District of Columbia. The Circuit Court did not have before it the impact of the Constitutional Amendment in question here.[1] Notwithstanding, *313 the Circuit Court did state that while the Tribe’s immunity is still intact,
The Cherokee Nation simply has no interest in protecting a sovereignty concern that has been taken away by the United States. As the District Court went to great lengths to explain, Vann, 467 F.Supp.2d at 66-70, the Thirteenth Amendment and the 1866 Treaty whittled away the Tribe’s sovereignty with regard to slavery and left it powerless to discriminate against the Freedmen on the basis of their status as former slaves. The Tribe does not just lack a special sovereignty.interest in discriminatory elections—it lacks any sovereign interest in such behavior. Vann at 755-756.
Nevertheless, the determination by the District Court that the Tribe had no sovereign interest in conducting a discriminatory election came before the Tribe amended its Constitution. Moreover, this Court virtually invited the Cherokee people to vote on the issue. Allen v. Cherokee Nation, 6 Am. Tribal Law 18, 20 (2006). “The Cherokee citizenry has the ultimate authority to define tribal citizenship ... The Constitution could be amended to require that all tribal members possess Cherokee blood.” The Cherokee people have now exercised their right to amend their Constitution. The Tribe has now redefined its membership and this Court cannot now in good faith tell it that it cannot do so.
That the tribe might ultimately amend its Constitution to bring it into conformance with federal law is irrelevant to our sovereign immunity analysis, because any such change would not be the direct result of judicial compulsion. If the tribe pursues these changes, its discretion will not be steered by the judicial hand. Vann at 754.
Any constitutional change here is discretionary and simply cannot be dictated by this Court.

. The Court below did acknowledge that the Tribe was making preparation to submit the issue of "Indian blood” to a vote of the people thereby amending the Tribe's Constitution. *313 Vann v. Kempthorne, 467 F.Supp.2d. 56 (D.C.2006) at n. 3